The next case this morning is 523-0095, People v. Jeremy Taylor. Arguing for the appellant is Joseph Banach. Arguing for the applee is Adam Rodriguez. Each side will have 10 minutes for their argument. The appellant will also have 5 minutes for rebuttal. Please note, only the clerk of the court is permitted to record these proceedings today. Good morning, counsel. Morning. Mr. Banach, are you ready to proceed? I am, your honor. Then go right ahead. Good morning, your honors. My name is Joseph Banach, and I'm with the Office of the State Appellate Defender. And I'm here today on behalf of my client, Jeremy Taylor. Jeremy Taylor is currently serving 20 years in prison for possessing a 3-1⁄2-inch knife and a spoon with trace amounts of methamphetamine residue on it. Taylor concedes that his conduct met the technical definition of armed violence, but he maintains that a 20-year sentence is excessive. This is the least severe instance of armed violence imaginable. A knife has to be over 3 inches to qualify as a dangerous weapon. The knife Taylor had in his pocket was 3-1⁄2 inches, meaning it almost literally could not have been shorter and still qualified as a dangerous weapon. Indeed, had the knife been half an inch shorter, Taylor would have been guilty of simple methamphetamine possession, which carries a maximum sentence of 10 years in prison. And as for the methamphetamine, the residue that was on the spoon was so minute that the state's chemist admitted she could not even weigh it. In other words, both elements of the armed violence statute were just barely satisfied in this case, making a 20-year sentence, which is 10 years more than the minimum, excessive. Moreover, Taylor was compliant throughout this case from the time he was arrested through trial. The arresting officers described Taylor's demeanor as calm, and they said he never tried to resist. When the officers approached Taylor, they asked him if he was Jeremy Taylor. Taylor said that he was, and he immediately put his hands behind his back so that the officers could handcuff him. Also, when the officers asked Taylor if he had anything pointy in his pockets, he was forthright and told them that he had needles and methamphetamine in his possession. And then, at trial, he candidly admitted to possessing the three-and-a-half-inch knife and the methamphetamine residue. Simply put, Taylor has never tried to evade responsibility for his actions. He has always owned up to his conduct. And despite what the state says, Taylor is not a threat to anyone. He is a 46-year-old man who struggles with drug addiction, but he has never been arrested for a crime of violence. Nearly all of his prior offenses are drug-related. He is not violent, he is not a threat to anyone, and he has never shown himself to be either, including in this case. Yes, as the state points out, the armed violence statute is meant to deter people from committing felonies while armed, but no reasonable person could conclude that there was ever the potential for violence in this case. Again, Taylor immediately surrendered. The small knife he had in his pocket was not even open. It was folded in, and he never reached for it. This is a far cry from the cases cited by the state, which involved defendants who possessed guns, sometimes multiple guns, that were readily accessible, and who also possessed large amounts of narcotics. Notably, the defendants in those cases, most of the defendants in those cases, received far less than 20 years in prison. In sum, while the legislator has determined that armed violence is a serious offense, it has not determined that every instance of armed violence should be treated the same. That is why it set a 10- to 30-year sentencing range, because it recognized that not every instance of armed violence is equally severe. And here, given that Taylor's conduct just barely met the definition of armed violence, he complied with all of the officer's commands, he did not cause or even threaten harm, and he owned up to his conduct at trial, a 10-year sentence, which would be the longest Taylor has ever spent in prison, would be more than sufficient to address the root causes of his criminal behavior, which is his drug addiction. Accordingly, this court should reduce Taylor's sentence to the minimum of 10 years, or remand for resentencing. If your honors don't have any questions, I will reserve any further remarks for rebuttal. A couple things, counsel. When you say he owned up to his conduct at trial, well, he didn't take a plea. He didn't own up to his conduct. He made the state have a trial, correct? He did, your honor, but when he took the stand, there was no evasiveness on his part at all. They asked him, did you know you had the knife? He said, yes, I knew I had the knife. They asked about the methamphetamine. He said he knew he had the methamphetamine. Even the trial court strongly commended Taylor for his honesty and his forthrightness at trial. To be quite honest, I've dealt with so many pretrial fairness cases in the last three months, it's hard to keep these straight when trying to remember where to knock it. I apologize if I was a little off on my question. No, not at all, your honor. Justice Welch or Justice Moore, do you have... I have one question. You said his priors were only drug offenses. You have no other offenses on priors? I mean, the majority of his prior... When you say majority, well, tell me the ones that aren't drug offenses. Yes, your honor. He has a lot of traffic offenses and squealing tires, I remember. Speeding and also a few retail thefts, I believe, which I think are probably related to his drug addiction. Okay. But nothing, and I think this is what you said, nothing with a weapon or any violent activity. It's mostly drug convictions. If I'm looking at this, methamphetamine. Obviously, the young man had a serious methamphetamine issue for quite some time. Yes, your honor. That's correct. Okay. Justice Moore, do you have any questions? No questions. Okay. Well, obviously, Mr. Menachia, you're going to have your time for rebuttal. Mr. Rodriguez, go right ahead. Thank you. Good morning again, your honors. May it please the court. The trial court did not abuse its discretion when it sentenced the defendant to 20 years imprisonment for armed violence. And defendant's sentence does not violate our state constitution's proportionate penalties clause. In this case, the trial court did not abuse its discretion in sentencing the defendant to 20 years imprisonment for armed violence based on defendant being otherwise armed with a knife while in possession of methamphetamine. Further, defendant's sentence was not excessive or it fell well within the statutory range and defendant's escalating criminal history demonstrated the likelihood of rehabilitation was improbable. Moreover, defendant's sentence does not violate our state constitution's proportionate penalties clause as defendant's act of being otherwise armed with a knife during the commission of the offense was exactly the kind of act the armed violence statute was enacted to address and deter.  was not an abuse of discretion and the sentence was not so disproportionate to the offense that it shocks the moral sense of the community. The intent of the armed violence statute is focused on not only punishing the criminal and protecting society, but deterring his conduct. Namely, the carrying of a weapon while committing a felony. And the mere presence of a weapon and not its actual use is sufficient to meet the requirements of the armed violence statute. That's what our Supreme Court said in People v. Alejos and People v. Heron. In this case, the evidence established defendant knowingly possessed both the knife and the methamphetamine as he approached Ms. Ray's home uninvited when officers made contact with him. The possible consequences that could have occurred if defendant had deployed the knife in his pocket were exactly the kind of circumstances that the legislature contemplated when enacting the armed violence statute and for which the armed violence statute is intended to prevent. Since, as this court indicated in People v. Wells and as echoed in People v. Scott, since it is the potential for violent encounters, not whether in hindsight a violent encounter occurs, which is the concern of the armed violence statute. Defendant argues that no reasonable person could have concluded that violence would have occurred in this case. That argument is irrelevant for purposes of the armed violence statute because it is merely whether there was a knife, whether the defendant possessed a knife or an otherwise dangerous weapon at the same time he committed a felony. It's that moment of time that is the concern of the armed violence statute and the deterrent effect is intended to prevent those circumstances. There is no further need to show that violence would occur. Defendant's argument on this point is soundly rejected by case law, both from this court and our Supreme Court and this court's sister districts. Defendant advances several arguments. I'd like to touch base on a few of them that I think come to the core of this issue. Defendant argues in his brief that there was never any potential for violence and therefore in this case the deterrent effect of the armed violence statute isn't effectuated or isn't satisfied. That argument's been rejected by our Supreme Court in People v. Scott where the court held that, quote, the determination of whether a defendant is armed occurs if they commit a felony while having on or about his person a dangerous weapon or otherwise being armed and to hold differently would completely eviscerate the deterrent purpose of the statute if a defendant's access and control over a readily available weapon had to ripen into the temptation to take actual physical possession. Defendant, as his argument shows, he contests that there was never any ripening so therefore the deterrent purpose of the statute isn't satisfied. That's just been rejected by People v. Harre. In his reply brief, defendant tries to distinguish several of the cases that people cited namely Wells, Stamos, Harre, Hunter, and Wise by asserting in those cases the defendants were found with dangerous weapons and large amounts of drugs as opposed to defendant in this case. However, in each of those cases, the reviewing courts affirmed the defendant's convictions for armed violence based on being otherwise armed with a dangerous weapon even though the weapons had not been deployed against the victims or police. As such, defendant's argument misses the point entirely about the armed violence statute. Furthermore, defendant argued that his 20-year sentence was more than any of his prior sentences or more than what he would have gotten for just metal possession. The fact that defendant received a 20-year sentence for armed violence which carried a range of 10 to 30 years which is different for the range of simple possession of less than 5 grams of methamphetamine which carries a range of 2 to 5 years has no relevance whatsoever whether defendant's sentence for armed violence was excessive. We don't engage in this sort of irrelevant offense or comparative analysis defendants advocating for. Sentencing courts look at the specific facts and circumstances of one case and assess the factors in mitigation, the factors in aggravation, and come to a learned sentence or a determined sentence based on that not on considerations related to other offenses that the defendant was not found guilty of. Defendant also debates the Beeble v. Salovar for the proposition that the severity of a sentence largely depends on the seriousness of the crime and the degree of harm caused. The Supreme Court in Salovar lowered the defendant's sentence for voluntary manslaughter because the trial court had improperly relied on the simple fact that the victim had died as an aggravating factor in sentencing. Yet the court noted it would have been proper for the sentencing court to have considered the force employed and the physical manner in which the victim's death had been brought about. As such, Salovar is completely inapplicable in this case and doesn't support defendant's proposition that the absence of harm should have been considered in sentencing. Your Honors, defendant cites Beeble v. Alejos for the proposition that deterrent rationality armed violence statute doesn't apply to every instance of armed violence and the opposite are here today. That wasn't the holding of Alejos at all. The court in Alejos held that voluntary manslaughter could not be a predicate felony upon which an armed violence conviction could be based off of because the armed violence statute doesn't apply to conduct that is the result of passion or misconception and is essentially undeterrable. In fact, our Supreme Court has rejected attempts to apply the rationality of Alejos quote, beyond the context of a homicide committed with a mitigated mental state, close quote. And that's Beeble v. Alejos, 153, Illinois 2nd, 145. It's a 1992 case. So defendant's reliance on Alejos fits there as well. And I would like to touch base on defendant's proportionate penalties clause claim or like thereof. Defendant's argument as to the proportionate penalties clause claim amounts to two pages citing some general propositions of proportionate penalty case law. However, to succeed on a proportionate penalties clause claim the defendant must show that a sentence is cruel, degrading, or so wholly disproportionate to the offense that attracts the moral sense of the community. In analyzing a proportionate penalties clause claim ultimately inquiry is whether the legislature has set the sentence in accord with the seriousness of the offense. It bears repeating that the General Assembly enacted the armed violence statute to emphatically to respond emphatically to the growing incidents of violent crime that was occurring in our state at the time. As the General Assembly noted in the legislative findings of the section the use of a dangerous weapon on the commission of an offense poses a much greater threat to public health, safety, and general welfare than when a weapon isn't used. And since the presence of a weapon enhances the danger that any felony that is committed will have deadly consequences the punishments mandated by the armed violence statute are intended to not only punish the defendant and protect society, but to deter that conduct which again is the carrying of a weapon while committing the offense. In total, the defendant has not cited any cases that have held that the armed violence statute violates the proportionate penalties clause of our state constitution nor do I believe he could since the armed violence statute is in a novel situation regarding an application of the armed violence statute. The statute has been around for a long time and the case law surrounding the armed violence statute stands squarely against the defendant. In the brief time I have left, I did want to address a question you had, Justice Welch, asking about defendant-acquired offenses. If we look at the PSI, as counsel indicated, between 1995 and 2001 the defendant has several traffic offenses. He does have in his background a prior weapons offense, namely, if you can hear, I just wanted to pull this up, the possession of a blanket knife that occurred in 2003 in which he was found guilty is what the PSI indicated was a Class A misdemeanor offense. And furthermore, as we go through the defendant's criminal history he has several offenses for methamphetamine possession. I will note that it is interesting that his very first offense for methamphetamine is not possession but the manufacturing of it. So as the trial court indicated in sentencing, the defendant had an evolving and escalating criminal history. He does have prior weapons offenses in his background and his prior complicity related to methamphetamine involved not only manufacturing it, which leads to its dissemination into our community, but also his own possession and stealing. There was multiple retail thefts which support the conclusion that the defendant was committing retail thefts to feed his lifestyle habit. He identified that his lifestyle was a tornado and the trial court did consider the fact that he was addicted at sentencing when it indicated at 1 of 3 of the record, excuse me, at 2, 63 of the record, that it would recommend that the defendant receive or be sent to a location in IDOC where he could receive treatment. The court considered the defendant's addiction for purposes of aggravation and mitigation. The trial court handed down a severe but absolutely appropriate sentence. So therefore, for these reasons, as well as those argued in our brief today, we ask you to affirm the defendant's conviction and sentence. Thank you very much. Well, thank you, counsel. Before we move on to rebuttal, Justice Welch or Justice Moore, do you have any questions? No further questions. No questions. All right. Thank you. Mr. Bernard, go right ahead with your rebuttal. Thank you, Your Honor. Most of the state's arguments focus on whether or not Jeremy Taylor committed armed violence. They say that it's irrelevant that, you know, he never used the knife in any way, that the knife was so small, that the amount of drugs was so minute, that, you know, there was never that he was compliant. They say that all of that is irrelevant to the question of whether he committed armed violence, and Taylor agrees. But it is relevant to the propriety of his sentence. Again, not every instance of armed violence should be treated the same. I mean, the state cites people v. Wells. In that case, the defendant severely beat somebody over the head with the butt of a shotgun. He received 11 years in prison. I think that really illustrates how out of step the 20-year sentence imposed in this case is. I mean, the state even says that this is exactly the kind of case where the armed violence statute was intended to apply. I really don't believe that that is what the legislator intended for a 20-year sentence to be imposed for this conduct. I think that that is an overstatement on the state's part. Again, the legislator prescribed a 10- to 30-year sentencing range with envisioning that there are going to be cases that differ, like Wells, where somebody is severely beat, and like this case, where a person is essentially just walking with a small knife in their pocket and a small amount of drugs. I'll stop you there, counsel. Does that not go to the standard of review of the abuse of discretion of the trial court to consider the nature of the charge, the circumstances of the charge, and importantly, the past criminality and all of the factors and aggravation in making a sentence that it believes should be handed down in the particular case? Absolutely, Your Honor.  But it is not binding. For good reason, this court has the power to correct an excessive sentence or order resentencing. As the state points out, under the Proportionate Penalties Clause, when a sentence does shock the moral sense of the community, this court can and should exercise its power to correct that error. And here, just given all of the facts that have already been laid out, this court should not hesitate to use that power in this case. Just to return to the point, though, about the state saying, well, it doesn't matter that there was never any potential for violence here. The Supreme Court has rejected that argument, but they've rejected it when it comes to determining whether or not the defendant committed armed violence. It's still relevant for purposes of sentencing. It's something that the court should consider when imposing a sentence. And lastly, the state brings up Alejos, where the court said that involuntary manslaughter could not serve as a predicate for armed violence because it is, by its very definition, undeterrable. I think when you look at the sentence, when you look at the conduct here, I don't believe that any reasonable person would suspect that they were, you know, in Taylor's position, that they were in violation of the armed violence statute and could be sentenced to 20 years in prison. So in this sense, it is somewhat analogous to Alejos, in that a 20-year sentence in this case is not going to deter anyone. And so for all of those reasons, Taylor believes that the 20-year sentence in this case is excessive and should be reduced to the minimum, or this case should be remanded for resentencing because his sentence, in this case, of 20 years for carrying a three-and-a-half-inch knife and a small amount of methamphetamine residue is excessive and violates the proportionate penalties clause of the Illinois Constitution. And if your honors have no further questions, I have no further remarks, and I would just ask that Taylor's sentence be reduced to 10 years or remanded for resentencing. Well, thank you, Counsel. Justice Welch or Justice Moore, do you have any final questions? No, no questions. No other questions. All right. Well, thank you, Counsel. Obviously we'll take the matter under advisement. We will issue an order in due course.